IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISI DIVISION

| | | |
|---|---|---|
| **PORT ARANSAS PARTNERS LTD** | § | |
| | § | |
|    **Plaintiff** | § | |
| | § | |
| v. | § | Civil Action No: 2:19-cv-81 |
| | § | |
| **AMERICAN BANKERS INSURANCE** | § | |
| **COMPANY OF FLORIDA** | § | |
| | § | |
|    **Defendant** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Port Aransas Partners Ltd, files this complaint against Defendant, American Bankers Insurance Company of Florida, and would show this honorable court as follows:

## Parties

1. Plaintiff, Port Aransas Partners Ltd (hereafter "Port Aransas" is a Texas Limited Partnership organized and domiciled in Texas.

2. Defendant, American Bankers Insurance Company of Florida (hereafter "American Bankers"), is a foreign company doing business in Texas that can be served through its registered agent at Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## Jurisdiction and Venue

3. This action seeks to recover insurance proceeds for damages caused by flooding. The court has jurisdiction over the lawsuit because all disputes arising from the handling of a flood insurance policy issued by a WYO insurer which is governed

exclusively be the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law.

4. Venue is proper in this district under 28 U.S.C. §1391(b)(2) because: (1) a substantial part of the events or omissions giving rise to this claim occurred in this district and; (2) a substantial part of the property at issue is situated in this district.

## Agency and Respondeat Superior

5. Whenever in this complaint it is alleged that the Defendant did any act or omission, it is meant that Defendant or its agents, officers, servants, employees, or representatives did such act or omission. They were also done with the full authorization or ratification of Defendant or done in the normal routine, course and scope of the agency or employment of Defendant or its agents, officers, servants, employees, or representatives.

## Conditions Precedent

6. All conditions precedent to recovery have occurred or been performed.

## Facts of the Case

7. Plaintiff's property at Marina Pond Addn Lt 28 & 29, Port Aransas, Texas 78373, sustained flood damage caused by Hurricane Harvey. Plaintiff purchased a national flood insurance policy for its property (Policy Number 60027533892016) from American Bankers.  This policy insured Plaintiff's property against damage and physical loss caused by flooding for the policy period of September 5, 2016 to September 5, 2017 and had a limit of $250,000 for damage to the building caused by flood. On or about August 26, 2017, Plaintiff reported this loss to American Bankers.

8. On September 14, 2017, American Bankers sent its adjuster, James Burns with Pilot Flood Management to evaluate the storm damage to Plaintiff's property. On

September 22, 2017, American Bankers sent Port Aransas a building advance payment of $15,000.

9. In a November 1, 2017 estimate, Burns estimated the Replacement Cost Value of the hurricane damage repairs to Plaintiff's property at only $71,228.79. After subtracting depreciation and applying a deductible, Burns determined the net claim at $56,284.95. Burns also estimated the Replacement Cost Value of the hurricane damage to Plaintiff's personal property at only $110,534.01. After subtracting depreciation and applying a deductible, Burns determined the net claim at $77,807.63.

10. Plaintiff then retained Matt B. Phelps, P.E. of APEC Engineering & Laboratory, LLC to evaluate the hurricane storm damage to Plaintiff's property. On November 13, 2017, Phelps commenced his investigation to determine the cause and extent of damage to Plaintiff's property from Hurricane Harvey. Phelps determined that Plaintiff's property was a total loss as a result both the floods and wind of Hurricane Harvey. Specifically, he determined that

> The wind damage to Building A1 (first floor) and A2 (second floor) for the Main Wind Force Resisting System (MWFRS) was 33.5% and 99.9% respectively, the flood was 66.5% and 0.1% for A1 and A2 respectively. The Wall Components and Cladding (Wall C&C) wind damage was 74.5% and 100% for A1 and A2 respectively.
> Flood damage was 25.6% and 0% for A1 and A2 respectively. The Roof Components and Cladding (Roof C&C) damage for A2 was 100% wind.
> The wind damage to Building B (unenclosed stairs and breeze way) for the MWFRS was 99.4%, and flood was 0.6%. Since Building B is an unenclosed structure (stairs and breeze way) there are no Wall C&C. The Roof C&C damage was 100% wind.
> The wind damage to Building C1 (first floor) and C2 (second floor) for the MWFRS was 33.5% and 99.9% respectively, the flood damage was 66.5% and 0.1% for the same. The Wall C&C wind damage was 74.5% and 100% for C1 and C2 respectively, flood damage was 25.6% and 0% for the same. The Roof C&C damage was 100% wind.

11. The percentage of damage to the property by flood as determined by APEC applied to the total value of the building was more than the limits of the flood policy. Plaintiff provided APEC's report to American Bankers.

12. On November 19, 2017, American Bankers sent Plaintiff two checks for the flood damage. One for the damage to Plaintiff's building in the amount of $41,135.51 and the other for the damage to Plaintiff's contents in the amount of $77,182.55.

13. As a result of Defendants failure to properly pay the policy limits for the flood damage to the building, Plaintiff hired a Texas public license insurance adjuster, Jason Lanier of JA Lanier & Associates, Inc., to assist in the handling of the claim, investigate, and report on Plaintiff's flood damage. Lanier inspected the property on December 18, 2017 to assess the hurricane storm damage. In a January 18, 2018 estimate, Lanier determined that the estimated Replacement Cost Value to properly repair only the flood damage to Plaintiff's property was $332,705.62. After subtracting depreciation, Lanier determined the Actual Cash Value/Net claim was $302,285.16, which was above the policy's limit for damage to the building. Lanier's estimate did not include the amount Plaintiff paid for debris removal and the estimated cost of debris removal that would be incurred during reconstruction. Including these amounts would further increase Plaintiff's loss over the policy limits.

14. On June 6, 2018, Michael Sullivan with Pilot Flood Management created a second estimate for American Bankers. Sullivan estimated the total amount of damage to the building at $133,892.33. After applying a $10,000 deductible, Sullivan determined the net claim at $123.892.33, less the prior payment for building damage.

15. On August 21, 2018, Plaintiff provided American Bankers with its Proof of Loss showing the net amount claimed at $327,807.63. On September 14, 2018,

American Bankers sent Plaintiff a letter stating that it was their belief that only $67,756.82 (Sullivan's estimate less the deductible and prior payment) was owed to Plaintiff for the covered building damages.

16. Instead of paying what was left of the policy limits for flood damage to the building ($193,864.49), American Bankers only issued a payment of $67,756.82 on September 20, 2019. American Bankers and its adjusters failed to properly estimate and pay for the flood damage to Plaintiff's property. To date, American Bankers has paid Plaintiff a total of $123,892.33 for damage to its building caused by flood. Because the property was a total loss, American Bankers still owes Plaintiff $126,107.67 plus increased cost of construction of an additional $30,000.

### Cause of Action for Breach of Contract Against American Bankers Insurance Company of Florida

17. According to the flood insurance policy that Plaintiff purchased, American Bankers has the duty to investigate and pay Plaintiff policy benefits up to the policy's limit for claims made for damages caused by flooding. As a result of water damage from flooding, which is a covered peril under the subject insurance policy, Plaintiff's property has been substantially damaged in excess of the insurance policy's limits for building coverage. American Bankers has breached this contractual obligation and the subject insurance policy by failing to properly pay Plaintiff the policy limit for the cost to properly repair the damage to its property. As a result of these breaches of contract, Plaintiff has suffered the damages that are described in this complaint.

### Damages

18. The above described acts, omissions, failures and conduct of Defendant has caused Plaintiff damages which include, without limitation, remaining policy benefits in

the amount of $126,107.67 for damage to the building and an additional $30,000 for increased cost of construction. All the damages described in this complaint are within the jurisdictional limits of the Court.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests a trial by jury, if applicable, requests that Defendant be cited to appear and answer, and requests that on final hearing, the court award Plaintiff a judgment against Defendant for actual and economic damages in an amount within the jurisdictional limits of the court; reasonable attorneys' fees through trial and on appeal, if applicable; pre-judgment and post-judgment interest as provided by law, if applicable; costs of court; and such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

*Loree & Lipscomb*
The Terrace at Concord Park
777 E. Sonterra Blvd, Suite 320
San Antonio, Texas 78258
Telephone: (210) 404-1320
Facsimile: (210) 404-1310


By: */s/ Cassandra Pruski*
    Cassandra Pruski
    Texas Bar No. 24083690
    cassie@lhllawfirm.com

Attorney for Plaintiff